## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RUSSELL LYNN HEROLD,                                    Case No. 1:11-cv-758
      Plaintiff                                         Barrett, J.
                                        Litkovitz, M.J.
      vs

COMMISSIONER OF                                         **REPORT AND**
SOCIAL SECURITY,                                        **RECOMMENDATION**
      Defendant

      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 10), the Commissioner's response in

opposition (Doc. 11), and plaintiff's reply memorandum. (Doc. 12).

## I. Procedural Background

      Plaintiff filed applications for DIB and SSI in April 2007, alleging disability since June 2,

2005, due to back and leg injuries sustained in a car accident. Plaintiff's applications were

denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted

a de novo hearing before Administrative Law Judge (ALJ) James W. Sherry. Plaintiff and a

vocational expert (VE) appeared and testified at the ALJ hearing. On September 25, 2009, the

ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for

review by the Appeals Council was denied, making the decision of the ALJ the final

administrative decision of the Commissioner.

## II. Medical Evidence

      The record contains evidence of plaintiff's medical treatment from November 2004 to

December 2009.

Plaintiff treated with George D.J. Griffin, M.D., from August 2004 to March 2006. (Tr. 198-242). At his initial appointment in August 2004, plaintiff complained of bilateral hand pain and numbness that kept him up at night. (Tr. 241). Dr. Griffin examined plaintiff and noted that he had full range of motion of all fingers, but also a palmar Dupuytren's contracture[1] between the third and fourth fingers in the palm of both hands. Dr. Griffin opined that plaintiff had bilateral Dupuytrens contracture, left worse than right and bilateral carpal tunnel syndrome, left worse than right. Plaintiff was prescribed Celebrex, referred for an electromyography ("EMG") and surgery was discussed. (Tr. 241).

On November 2, 2004, plaintiff treated at Mercy Hospital for complaints of back and neck pain. Plaintiff reported that the previous day he had been involved in a motor vehicle accident. Plaintiff stated he was stopped in his vehicle when he was struck by a car travelling approximately 70 miles per hour. An x-ray was taken of plaintiff's spine. The findings were normal and there was no fracture noted, though the x-ray evidenced mild degenerative changes in the cervical spine and hemisacralization[2] of the L5 vertebral segment right. No numbness was reported and plaintiff was diagnosed with cervical and lumbar strain and prescribed Vicodin. (Tr. 175-77).

Plaintiff underwent surgery to his left hand on November 18, 2004 for his carpal tunnel syndrome and palmar Dupuytren's contracture. (Tr. 239-40). At his first post-operative visit, plaintiff reported improvement in hand sensation and that his pain was well controlled. (Tr.

---

[1] Palmar dupuytrens is "a fibrosing disorder that results in slowly progressive thickening and shortening of the palmar fascia, leading to the debilitating digital contractures." http://emedicine.medscape.com/article/329414-overview (last visited Dec. 19, 2011).

[2] Hemisacralization is "[t]he abnormal development of one half of the fifth lumbar vertebra so that it is fused with the sacrum." http://www.tabers.com/tabersonline/ub/view/Tabers/143440/27/hemisacralization (last visited Dec. 19, 2011).

238).  At his second post-operative visit November 29, 2004, plaintiff reported that full sensation had returned to his finger tips and Dr. Griffin noted that plaintiff had full extension of his fingers and palm.  (Tr. 237).  In January 2005, plaintiff underwent similar surgery on his right hand.  (Tr. 234-35).  At the post-operative follow-up, plaintiff reported mild pain and tenderness which was controlled with medication.  (Tr. 232).  Dr. Griffin opined that plaintiff was cognitively unimpaired and capable of driving while on his prescribed medications, Lortab and Neurontin. *Id*.

Plaintiff's back was x-rayed again in February 2005.  (Tr. 178).  Thoracic spine images demonstrated normal alignment, no evidence of fracture, and disc spaces were unchanged from November 2004.  *Id*.  Plaintiff was diagnosed with hemisacralization, mild compression deformity of L3 with sclerosis and prominent osteophyte likely from a remote fracture, and mild disc space narrowing at L5-S1.  (Tr. 179).

On February 25, 2005, plaintiff treated with his primary care physician, David Monch, M.D., for complaints of back pain.  Plaintiff reported ongoing pain, not alleviated by Ultracet. Dr. Monch prescribed Percocet and noted that plaintiff was scheduled for physical therapy later that day.  (Tr. 181-82).

Plaintiff was treated at Sports Therapy, Inc. for physical therapy for his thoracic strain on February 25, 2005.  At his evaluation, plaintiff complained of thoracic pain of up to 9/10 intensity, localized along the spine from T4-T12 with tenderness to palpation.  The physical therapist noted the following significant dysfunctions: decreased lumbar range of motion; decreased scapula strength of the middle and lower trapezins 4/5; and extremely rounded shoulders and forward head.  (Tr. 180).

3

Plaintiff returned to Dr. Griffin on March 15, 2005 complaining of dull left-sided back pain and occasionally severe and sharp low back pain. Plaintiff reported that his pain increased with bending, lifting, sitting, standing, and walking. Upon physical examination, Dr. Griffin noted that plaintiff had a mildly antalgic gait on the left, but no evidence of muscle wasting and 5+ muscle strength in the lower extremities. Further, plaintiff's lower extremity sensation was intact and no vertebral tenderness or paraspinous muscle tenderness or spasm was found. Straight leg raising was negative bilaterally. Deep tendon reflexes were 3+ bilaterally at the knees and 0 bilaterally at the ankle. Dr. Griffin opined that plaintiff had a possible herniated lumbar disc resulting from a fracture. Plaintiff was scheduled for an MRI, continued on Percocet and Naprosyn, and advised to return for re-evaluation in a month. (Tr. 231).

On March 17, 2005, plaintiff underwent an MRI of his lumbar spine. (Tr. 194-95). The MRI showed mild disc bulging at L2-3, diffuse disc bulging at L3-4 consistent with an annular tear, moderate diffuse disc bulging at L4-5 and partial sacralization of L5.

Plaintiff treated with Dr. Griffin several times from April to September 2005 and consistently reported a constant dull aching pain in his back with intermittent burning sensations in his left leg and a pain level of 4-7 out of ten with medication and 9 without medication. (Tr. 219-30). Dr. Griffin reviewed the MRI results with plaintiff and managed his pain medications. *Id.* In May 2005, plaintiff reported improvement of pain with walking and lying down. (Tr. 229). Dr. Griffin noted that plaintiff's range of motion had decreased 40% and was limited by pain and tightness; Methadone was prescribed for breakthrough pain. *Id.* In June 2005, plaintiff reported that his pain was aggravated by bending, lifting, stooping, and sitting. (Tr. 227). Dr. Griffin noted that plaintiff walked with a normal gait but had decreased range of motion and

4

advised plaintiff on work activity, exercise precautions, and proper carrying techniques. *Id*. Plaintiff reported 6-7 hours of broken sleep per night and his Methadone was increased. *Id*. On June 15, 2005, Dr. Griffin noted that plaintiff had a normal gait but his range of motion was decreased by 25%; plaintiff's Methadone dosage was again increased. (Tr. 226). At a June 29, 2005 visit, plaintiff's straight leg raising was positive at 80 degrees on the left and negative on the right and his range of motion was decreased 30%. (Tr. 224). Plaintiff denied difficulty walking, was instructed to exercise, and his Methadone dosage was increased. *Id*. On August 10, 2005, plaintiff reported left leg pain greater than right and his straight leg raising was negative bilaterally. (Tr. 222). Plaintiff further reported that he experienced a 40+ % improvement and stated that his pain was at most a five of 10 on a "bad day." *Id*. At a September 13, 2005, Dr. Griffin noted that plaintiff had no vertebral tenderness on physical exam but mild tenderness and tightness in his left side. (Tr. 220). Plaintiff was noted as having a mildly antalgic gait, a 30% decrease in range of motion, his straight raising was positive left, negative right, and the muscles of his left leg were size decreased. *Id*. Plaintiff reported some side effects from the Methadone, specifically nightmares. *Id*.

In September 2005, plaintiff was evaluated by Robert L. Boyer, M.D., an independent medical examiner, for workers' compensation purposes. Plaintiff reported intense, daily lumbar pain requiring large doses of opiates and that, nevertheless, there were still days when he was bed-ridden. Dr. Boyer noted that plaintiff was in obvious discomfort throughout the physical exam and that he walked with an antalgic gait. Dr. Boyer opined that plaintiff's lumbar pain equated to an 8% whole person impairment based on his examination, plaintiff's subjective complaints, and plaintiff's prior treatment. (Tr. 183-86).

Plaintiff followed up with Dr. Griffin on October 11, 2005 and he was noted as having a normal gait, negative straight leg raising bilaterally, and a 40% decrease in range of motion. (Tr. 218). At a November 2005 visit, Dr. Griffin noted that plaintiff was walking with a moderate right antalgic gait and that plaintiff's left foot was swollen. (Tr. 214). Further, plaintiff was reported as having a 40% decrease in range of motion and his straight leg raising was positive on the left at 80 degrees. *Id.* Plaintiff reported pain at an 8 of ten on bad days and Neurontin was added. *Id.* Examination results from December 6, 2005 showed that plaintiff had a distal edema in his left ankle, straight leg raising was positive on the left at 90 degrees and negative on the right. (Tr. 212). Plaintiff reported numbness in his back to his knee and his range of motion was decreased by 30%. *Id.* Plaintiff reported his pain at a four with medication and stated he slept 3-4 broken hours at night due to pain. *Id.*

On December 11, 2005, plaintiff was treated at Mercy Hospital for lower back pain following a slip and fall on ice. Plaintiff was noted as having a steady gait and straight leg raising was negative. An x-ray was taken of plaintiff's back and it was consistent with his prior x-rays. Plaintiff was diagnosed with lumbar strain and treated with ice, Motrin, and Vicodin. (Tr. 188-92).

Plaintiff saw Dr. Griffin three times between January and March 2006. (Tr. 203-09). In January, plaintiff was noted as having a normal gait, there was no distal edema, and the straight leg raising was negative bilaterally. (Tr. 209). Plaintiff reported sleeping 7 broken hours at night. *Id.* In February, plaintiff demonstrated a mildly antalgic gait in his left leg and the straight leg raising was positive left, negative right. (Tr. 206). Plaintiff reported ongoing numbness in his left leg. *Id.* The final treatment notes from Dr. Griffin are from the March 14,

6

2006[3] visit in which plaintiff was noted as having a normal gait, positive straight leg raising on the left, negative on the right, decreased range of motion, and ongoing left side numbness. (Tr. 203). Plaintiff reported pain at a 4 with medication and a 5 on bad days. *Id*.

Plaintiff treated at Physicians Healthsource from April 2006 to September 2009. (Tr. 243-61, 270-303, 342-60). At his initial visit, plaintiff saw M. Raza Khan, M.D., and reported his history of back, neck, and leg pain and stated that he had seen another pain specialist but was not improving. (Tr. 256). Examination revealed tenderness of the cervical, thoracic, and spinal areas and decreased sensation in the left lateral foot area. *Id*. Plaintiff was prescribed Methadone, Cymbalta, Zanaflex, and Elavil and advised to follow-up in one month. *Id*. Plaintiff's pain complaints were unchanged in May 2006 and notes show that epidural injections were to be requested from plaintiff's workers' compensation. (Tr. 255). On June 20, 2006, plaintiff reported ongoing pain and numbness in his left arm. (Tr. 254). Examination results were unchanged from the prior visit and an EMG of plaintiff's left arm and an MRI of his back were ordered. *Id*. Plaintiff's examination results and subjective reports were unchanged in his July and August visits. (Tr. 252-53).

Plaintiff underwent a second lumbar MRI on September 12, 2006 which demonstrated degenerative disc desiccation with mild disc thinning at L2-L3 and L3-L4. Degenerative disc desiccation with a broad posterior disc bulge was shown at L4-L5. A left-sided disc bulge and disc spur were noted causing mild left neural foraminal stenosis. The L5-S1 disc was mildly hypoplastic but appeared unremarkable. (Tr. 196-97).

---

[3] The transcript includes a March 20, 2006 letter from Dr. Griffin to plaintiff discontinuing treatment due to plaintiff's altering a prescription for opioids. (Tr. 202).

On October 12, 2006, an EMG showed left radial neuropathy. (Tr. 257). Also, the associated physical exam demonstrated that plaintiff had weakness of wrist extensors 2/5, finger extensors 3/5, and interosseous 5/5. *Id*.

Plaintiff's treatment notes from Physician's Healthsource from September 2006 to April 2007 demonstrate that plaintiff had continued back and neck pain, was not getting physical therapy despite his doctor's recommendation, and no significant changes in his condition were noted. (Tr. 242-51).

Dr. Griffin composed an undated report in response to an April 13, 2007 request for Social Security purposes. Dr. Griffin opined that plaintiff had contracture of palmar fascia and hand joint, trigger finger, carpal tunnel syndrome, displacement of lumbar intervertebral disc without myelopathy, and lumbar sprain. Dr. Griffin reported that he no longer treated plaintiff as a result of plaintiff altering a prescription for opioid medication. Dr. Griffin declined to give his opinion on plaintiff's ability to perform sustained work activity stating he had not given an opinion on such limitations since February 23, 2006. (Tr. 198-200).

May 17, 2007 progress notes from Dr. Khan of Physician's Healthsource show that plaintiff continued to complain of neck and back pain radiating to his leg and Dr. Khan continued to recommend therapy and epidural injections. (Tr. 280).

On May 29, 2007, non-examining agency physician Paul Morton, M.D., completed a physical residual functional capacity (RFC) assessment. (Tr. 262-69). Dr. Morton opined that plaintiff could: lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand and/or walk about six hours in an eight-hour workday; push and/or pull with no limitations; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb

ladders, ropes, or scaffolds; and had limited fine manipulation (fingering) abilities. (Tr. 263-64). Dr. Morton based his opinion on the March 2005 MRI, the October 2006 EMG, the December 2006 MRI, and a review of treatment notes from Dr. Griffin. (Tr. 263, 267).

Plaintiff completed a pain assessment at a June 19, 2007 follow-up with Dr. Khan, describing his current and average pain at a level five out of 10, at best a four out of 10, and at worst an eight out of 10. (Tr. 279). Plaintiff reported that he had not undergone any physical therapy and Dr. Khan continued to recommend it. (Tr. 278). July, August, and September 2007 progress notes contain similar recommendations and document plaintiff's ongoing pain and lack of therapy treatment. (Tr. 272-74, 288). On October 10, 2007, plaintiff completed a "Pain Disability Index" and reported the following levels of disability on a scale from zero (no disability) to 10 (worst disability): family/home responsibilities: 4; recreation: 0; social activity: 1; occupation: 0; sexual behavior: 0; self-care: 2, and; life support activity: 4. (Tr. 287). Plaintiff reported that he was more functional and able to walk when on a combination of Methadone and Percocet than Percocet alone. (Tr. 286). Examination revealed some paraspinal tenderness in the lower lumbar region, increased pain with forward flexion in the lumbosacral range of motion, decreased sensation in the left L2-L3 distribution, and no facet or S1 joint tenderness. No trigger points were identified, motor strength was 5/5 in the lower extremities and straight leg raising was negative. *Id.* Plaintiff was diagnosed with herniated lumbar disc, lumbar strain/sprain, and cervical strain/sprain. *Id.* Dr. Tabao of Physician's Healthsource recommended acupuncture treatment to address the cervical and lumbar pain and continued Percocet and prescribed Methadone. *Id.*

There are no treatment records from October 2007 to January 2009, at which point plaintiff began treatment with Jose Martinez, M.D., of Physician's Healthsource. Plaintiff first treated with Dr. Martinez on January 29, 2009 and he reported he had cervical spine pain and was currently taking Flexeril and Naproxen but they were not alleviating his pain. (Tr. 294). Upon examination, Dr. Martinez noted tenderness in the lumbosacral area, decreased range of motion, and muscle spasms. (Tr. 295). Plaintiff's Flexeril and Naproxen were continued and he was advised to have another EMG, undergo an MRI, and get chiropractic treatment. *Id*.

February 2007 progress notes from Dr. Martinez show that plaintiff continued to report that his medication, Norco, was not helping his pain and was upsetting his stomach. (Tr. 293). Plaintiff reported pain at a five to six out of 10 and a history of gastrointestinal acid reflux which Dr. Martinez opined was likely related to intolerance to Tylenol. *Id*. Dr. Martinez stopped Norco and started Methadone, Tagamet, and Oxycodone. *Id*.

Plaintiff was seen for chiropractic evaluation on February 24, 2009 by John E. Ruch, D.C. Clinical findings demonstrated that plaintiff had an antalgic gait and stance. Plaintiff's range of trunk motion was painfully restricted in all planes, straight leg raising was positive, palpation revealed rigidity/spasticity of the postural paralumbar musculature, and heel and toe walk were unstable. (Tr. 320-21).

On March 9, 2009, plaintiff underwent an MRI of his lumbar spine which revealed: a mild disc bulge at L1-2 and mild central canal narrowing; a disc bulge at L2-3 with mild facet hypertrophy and moderate to severe central canal stenosis; a disc bulge at L3-4 with facet hypertrophy and mild to moderate central canal stenosis; a disc bulge at L4-transitional L5 with facet hypertrophy and mild to moderate central canal stenosis; multilevel neural foraminal

10

narrowing; and a right renal cystic lesion. (Tr. 299-300). An EMG on April 2, 2009 was normal and the radiologist noted that there was no evidence of radiculopathy. (Tr. 296).

Plaintiff received a selective left L4 neuroforaminal injection with steroid under fluoroscopy on May 27, 2009. (Tr. 340-42). Plaintiff was scheduled for a follow-up in a few weeks (Tr. 341) but the record does not contain any further records regarding the injection.

On August 15, 2009, Dr. Martinez completed a "Multiple Impairment Questionnaire" and diagnosed plaintiff with multiple disc bulges at L1-2, L2-3, L3-4, and L4-5, facet arthropathy at L2-3 and L3-4, canal stenosis at L1-2, L2-3, L3-4, and L4-5, fibromyalgia, depression, anxiety, and lumbar neuritis. (Tr. 309-19). Dr. Martinez opined that plaintiff's prognosis was poor but stable and reported that he based his findings on physical examination results, including plaintiff's loss of sensation and strength on the left, limpy gait and antalgic posture, positive straight leg raising bilaterally, and decreased deep tendon reflexes bilaterally and plaintiff's March 2009 abnormal MRI results. (Tr. 309-10). Further, Dr. Martinez provided that plaintiff's subjective reports of low-back pain, tingling, burning and numbness of the lower extremities, back stiffness and tenderness, and increased pain with activity supported his diagnoses. (Tr. 310). Dr. Martinez opined that plaintiff had the RFC to: sit two hours in an eight-hour workday; stand/walk one to two hours in an eight-hour workday; frequently lift or carry five pounds; occasionally lift or carry five to ten pounds; never lift or carry anything over ten pounds; never engage in repetitive reaching; occasionally bend or stoop; and never push, pull, or kneel. (Tr. 314-15, 318). Dr. Martinez further opined that plaintiff was markedly limited in his ability to reach, including overhead reaching; moderately limited in his abilities to turn or twist objects; and minimally limited in his ability to grasp or use his fingers and hands for fine manipulation.

11

He opined that plaintiff should avoid exposure to wetness, noise, fumes, gases, temperature extremes, humidity, dust, and heights. (Tr. 315-16, 318). Dr. Martinez stated that it would be medically recommended or necessary for plaintiff to not sit continuously in a work setting and that plaintiff must get up and move around every 10 to 15 minutes. (Tr. 314). The questionnaire further included Dr. Martinez's opinion that: plaintiff's impairments were ongoing and expected to last at least twelve months; plaintiff required the ability to take multiple unscheduled breaks throughout the day due to his frequent need to move around; and plaintiff was likely to miss more than three days of work each month due to his impairments. (Tr. 317-18). Dr. Martinez further opined that plaintiff was totally disabled. (Tr. 306).

Dr. Martinez drafted an August 17, 2009 letter pursuant to a request from plaintiff's attorney. (Tr. 304-05). Dr. Martinez described plaintiff's medical history and remarked that plaintiff's status was guarded, and that he reported pain at levels five to seven out of 10, was depressed, and had been referred for psychiatric evaluation. (Tr. 304). Dr. Martinez diagnosed plaintiff with lumbar disc displacement, lumbar radiculitis, lumbar sprain, lumbar spinal stenosis, remote fracture of L3/L4 vertebrae resulting from the 2004 accident, depression, and anxiety. (Tr. 305).

The last medical evidence in the record is from December 14, 2009, when plaintiff underwent another spinal MRI. The findings indicated that plaintiff had degenerative disc disease with multilevel disc bulges or disc protrusions resulting in multilevel mild to moderate spinal stenosis and disc sequestration posterior to the L5 vertebral body in a left paracentral location which approaches the exiting left L5 nerve root. (Tr. 359-60).

### III. Analysis

#### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson* v. *Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

13

2004). Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since June 2, 2005, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: lumbar degenerative disc disease, bilateral carpal tunnel syndrome, left radial neuropathy, and contracture of palmar fascia and hand joint (20 C.F.R. 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to occasionally lift or carry up to 20 pounds and frequently lift or carry 10 pounds. The claimant can stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday, and he is unlimited in his ability to push and/or pull within lifting restrictions. He can never climb ladders, ropes or scaffolds, and he can climb ramps or stairs only occasionally. The claimant can balance with a hand held device, stoop, crouch, kneel, and crawl only occasionally. He can engage in frequent handling with his left hand (including grasping, holding, and turning objects).
>
> 6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

14

7. The claimant was born on January 1, 1957 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 2, 2005 through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 20-25).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

15

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ did not properly weigh the medical opinions of record in formulating plaintiff's RFC; (2) the ALJ improperly evaluated plaintiff's credibility; and (3) the ALJ presented an improper hypothetical to the VE.[4]

1. The ALJ erred by failing to include Dr. Martinez's limitations when formulating plaintiff's RFC.

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525,

---

[4] Plaintiff's third assignment of error is essentially a rehashing of plaintiff's RFC argument. Accordingly, the Court will address it in conjunction with plaintiff's first assignment of error. Moreover, in light of the undersigned's recommendation, plaintiff's third assignment of error should be sustained for similar reasons as the first.

529-30 (6th Cir. 1997).  Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983).  The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985).  If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight.  20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530.  If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference.  *Harris*, 756 F.2d at 435.  *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992).  The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision.  *Walters*, 127 F.3d at 529; *Shelman*, 821 F.2d at 321.

Here, the ALJ determined, based heavily on the opinion of non-examining physician Dr. Morton, that plaintiff had the RFC to perform a limited range of light work:

> [Plaintiff] has the [RFC] to occasionally lift or carry up to 20 pounds and frequently lift or carry 10 pounds. [Plaintiff] can stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday, and he is unlimited in his ability to push

> and/or pull within lifting restrictions. He can never climb ladders, ropes or
> scaffolds, and he can climb ramps or stairs only occasionally. The claimant can
> balance with a hand held device, stoop, crouch, kneel, and crawl only
> occasionally. He can engage in frequent handling with his left hand (including
> grasping, holding, and turning objects).

(Tr. 21).

In contrast, Dr. Martinez, plaintiff's treating physician, gave plaintiff an RFC for

sedentary work. (Tr. 309-19). Plaintiff argues that the ALJ erred by not accounting for the

limitations provided by Dr. Martinez in formulating plaintiff's RFC. As Dr. Martinez was his

treating physician, plaintiff asserts that his opinion is entitled to controlling weight. Moreover,

plaintiff contends that the ALJ erred in relying heavily on Dr. Morton's RFC assessment in light

of his status as a non-examining agency physician, the temporal remoteness of his opinion, and

the fact that Dr. Morton did not have the full medical record before him at the time he completed

the RFC assessment. For the reasons stated below, the Court finds plaintiff's arguments well-

taken.

The Sixth Circuit has recently reaffirmed the long-standing principle that the "ALJ 'must'

give a treating source opinion controlling weight if the treating source opinion is 'well-supported

by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent

with the other substantial evidence in [the] case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581

F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th

Cir. 2004); 20 C.F.R. § 404.1527(d)(2)). When the ALJ declines to give controlling weight to a

treating physician's assessment, "the ALJ must still determine how much weight is appropriate

by considering a number of factors, including the length of treatment relationship and the

18

frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406.

In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion, based on the evidence in the record, and the reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. *Id*. at 406-07 (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188, at *5; *Wilson*, 378 F.3d at 544). The ALJ's failure to adequately explain the reasons for the weight given a treating physician's opinion "*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407 (emphasis in the original) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)).

In his decision, ALJ Sherry noted that Dr. Martinez had treated plaintiff for eight months. But, despite being plaintiff's treating physician, the ALJ placed "little weight" on Dr. Martinez's opinion. (Tr. 23). To justify this departure from the guidelines of § 404.1527, the ALJ stated that "Dr. Martinez's opinion is not well supported by medically acceptable clinical findings and laboratory diagnostic techniques." *Id*. The ALJ noted the findings that plaintiff had mild to moderate stenosis at L3-4 and L4-5 and moderate to severe stenosis at L2-3 as well as neuropathy but, nevertheless, concluded that these objective findings did not justify Dr. Martinez's medical opinion that plaintiff "could not sustain an 8-hour workday." *Id*. Further, the ALJ determined that Dr. Martinez's opinion was inconsistent with his treatment notes and

19

exam findings, and with plaintiff's activities of daily living. *Id.* Lastly, the ALJ concluded that Dr. Martinez's opinion was heavily based on plaintiff's subjective reports and, hence, undeserving of more than "little weight." *Id.* In light of the evidence of record, the ALJ's findings with regard to Dr. Martinez's opinion are not substantially supported.

First, the ALJ's determination that Dr. Martinez's opinion is not supported by clinical findings is contradicted by the objective and clinical evidence of record. Plaintiff's x-rays and MRIs have consistently shown that plaintiff suffers from demonstrable spinal damage. *See* Tr. 176 (November 2004 x-ray showed hemisacralization of the L5 vertebral segment); Tr. 178 (February 2005 x-ray demonstrated mild compression deformity at L3 with increased sclerosis and prominent osteophyte formation and possible remote mild compression fracture); Tr. 194 (a March 2005 MRI revealed mild to moderate disc bulging at L2-3, L3-4, L4-5 and partial sacralization at L5); Tr. 197 (plaintiff's September 2006 MRI showed mild neural foraminal narrowing left secondary to L4-5 disc bulge); Tr. 257 (the October 2006 EMG indicated left radial neuropathy); Tr. 300 (March 2009 MRI demonstrated mild disc bulge at L1-2 with mild central canal narrowing, disc bulge at L2-3 with mild facet hypertrophy and moderate to severe central canal stenosis, disc bulge at L4-5 with mild to moderate central canal stenosis and facet hypertrophy, multilevel neural foraminal narrowing, and a right renal cystic lesion); Tr. 359-60 (December 2009 MRI revealed degenerative disc disease with disc bulges at multiple levels, multilevel mild to moderate spinal stenosis, and disc sequestration posterior to L5 approaching the L5 nerve root). Further, the clinical evidence of record supports Dr. Martinez's opinion. Plaintiff was repeatedly noted as having: an antalgic gait (Tr. 184, 206, 214, 220, 231, 309, 320),

decreased range of motion and/or strength (Tr. 180, 203, 212, 214, 218, 220, 226, 229, 295, 320), positive straight leg raising results (Tr. 203, 206, 212, 214, 220, 224) and tenderness in his back and/or left side area.  (Tr. 180, 220, 245-48, 250-52, 253, 256, 274, 286, 295, 320).  While the record also includes findings that plaintiff on occasion had a normal gait, negative straight leg raising tests, and no tenderness, it is clear that there is ample objective and clinical evidence supporting Dr. Martinez's opinion.  Thus, the ALJ's determination on this score is without substantial support.

Second, the ALJ improperly discounted Dr. Martinez's opinion when he stated that he "did not consider [the objective evidence documenting plaintiff's stenosis and neuropathy] justification for Dr. Martinez's opinion that [plaintiff] could not sustain an 8-hour workday." (Tr. 23).  The ALJ discounted Dr. Martinez's opinion without relying on *any* medical evidence or opinion to support his assertion that Dr. Martinez's limitations are not justified by objective findings of stenosis and neuropathy.  It appears that the ALJ improperly substituted his own lay opinion for Dr. Martinez's opinion with regard to what limitations are supported (or "justified") by these objective findings.  The "ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).  The ALJ's failure to cite to any medical evidence or opinion in determining that the objective evidence does not support Dr. Martinez's opinion constitutes reversible error.

Third, while it may be justifiable to discount the weight given to a treating physician's opinion where it is contradicted by other evidence of record, *see Gaskin v. Comm'r of Soc. Sec.*,

280 F. App'x 472, 475 (6th Cir. 2008), the ALJ must provide evidentiary support for these "good reasons." *Rogers*, 486 F.3d at 242. Here, the ALJ discarded Dr. Martinez's opinion without identifying the contradicting evidence or explaining the inconsistencies. To facilitate meaningful judicial review the ALJ must state the evidence considered which supports his conclusion and also give some indication of the evidence rejected. *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). *See also Shelman*, 821 F.2d at 321. Here, the ALJ has failed to provide the necessary support for his conclusory finding that evidence of record contradicts or is inconsistent with Dr. Martinez's opinion.

Similarly, the ALJ cursorily determined that plaintiff's reports of daily activity contradicted Dr. Martinez's limitations without providing any reference to the evidence relied upon. The ALJ did not identify which of plaintiff's reported daily activities or Dr. Martinez's limitations he was referring to, nor did he explain how plaintiff's reports contradicted the limitations. Accordingly, this Court is unable to meaningfully review the ALJ's determination that Dr. Martinez's opinion is inconsistent with the medical evidence and/or plaintiff's daily activities; thus, the ALJ's findings in this regard are without substantial support.

Lastly, the ALJ's decision to discount Dr. Martinez's opinion based on his finding that it "is based heavily on claimant's self-reports" is unsupported. In formulating his August 2009 opinion with regard to plaintiff's physical abilities, Dr. Martinez identified that he was relying on clinical findings of: positive straight leg raising tests, loss of left-side sensation and strength, limpy gait and antalgic posture, and decreased deep tendon reflexes bilaterally. (Tr. 309). Further, Dr. Martinez specified the objective evidence of record forming the basis of his opinion

22

– the March 2009 MRI and April 2009 EMG. (Tr. 310). Though Dr. Martinez *also* considered plaintiff's subjective complaints of pain, weakness, and numbness, Tr. 309-10, it is evident that his opinion was not inordinately based on plaintiff's subjective complaints such that the ALJ's determination to discount it on that basis is substantially supported.

Dr. Martinez treated plaintiff regularly for the eight months immediately preceding the ALJ hearing. His opinion, drafted three days before the hearing, identified the clinical, medical, and subjective evidence relied upon. Rather than adopt this opinion, the ALJ provided unsupported bases for discounting it and elected to adopt the opinion of non-examining agency reviewing physician Dr. Morton. The only rationale the ALJ provided for placing "great weight" on Dr. Morton's RFC assessment was that "his opinion is well supported by medically acceptable clinical findings and laboratory diagnostic techniques." (Tr. 23).

Dr. Morton's assessment was drafted in May 2007, two years prior to the ALJ hearing, and was based on an incomplete medical record. Dr. Morton did not have the opportunity to review plaintiff's medical treatment with Dr. Martinez or the subsequent objective evidence. As this subsequent evidence reflects ongoing treatment, the Court requires "'some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Blakley*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3)). Moreover, the ALJ's decision to afford greater weight to the remote and partially informed opinion of Dr. Morton, a non-examining physician, is improper in light of the contrary,

23

complete, and proximal opinion of Dr. Martinez, plaintiff's treating physician. *See Shelman*, 821 F.2d at 321.

The ALJ failed to identify the evidence he relied on in rejecting Dr. Martinez's opinion or acknowledge that Dr. Morton's RFC assessment was based on an incomplete record. These failures are not harmless error as they deprive the Court of the ability to meaningfully review the ALJ's decision. *Blakely*, 581 F.3d at 409 (citing *Wilson*, 378 F.3d at 544). The undersigned concludes that the ALJ erred in formulating plaintiff's RFC based on Dr. Morton's opinion without acknowledging its limited nature. Further, the ALJ erred by failing to provide "good reasons," supported by the evidence, for rejecting Dr. Martinez's opinion. Consequently, plaintiff's first assignment of error should be sustained.

With respect to the third assignment of error, plaintiff argues that the ALJ relied upon flawed testimony from the VE. As explained above, the ALJ's RFC assessment is based on the opinion of non-examining physician Dr. Morton and ignores the limitations provided by plaintiff's treating physician, Dr. Martinez (who opined that plaintiff was limited to sitting two hours in an eight-hour workday; standing/walking one to two hours in an eight-hour workday; lifting five to ten pounds occasionally and up to five pounds frequently; never lifting anything over ten pounds; required the ability to shift postures every 10 to 15 minutes; and would likely miss three days of work each month). The hypothetical propounded by the ALJ, based on the state agency RFC, therefore suffers from the same problems as the RFC. Accordingly, the ALJ erred by relying on this vocational testimony to carry his burden at Step 5 of the sequential evaluation process. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009)

24

(ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's physical impairments). Because the ALJ's hypothetical questions failed to accurately portray plaintiff's impairments, the vocational expert's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the work identified by the VE. Therefore, plaintiff's third assignment of error should be sustained.

2. The ALJ's credibility determination is substantially supported.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton*, 246 F.3d at 773; *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). In determining credibility, the ALJ may consider the claimant's testimony of limitations in light of other evidence of the claimant's ability to perform other tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds. *Heston v. Comm'r*, 245 F.3d 528, 536 (6th Cir. 2001).

The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has

25

taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

Plaintiff asserts that the ALJ erred in finding plaintiff's subjective complaints "not credible to the extent they are inconsistent with [the ALJ's RFC] assessment." (Doc. 10, p. 17; Tr. 22). In making this credibility determination, the ALJ noted that plaintiff had been discharged from treatment with Dr. Griffin after he altered a prescription for opioid medication.[5] Plaintiff testified that he altered the prescription by changing the date, asserting that Dr. Griffin had improperly dated the prescription. (Tr. 48). Plaintiff's Statement of Errors does not address this basis for the ALJ's credibility finding.

The Court finds that the ALJ's credibility determination is substantially supported due to plaintiff's alteration of a prescription for opioids. Although plaintiff testified at the hearing that he only altered the prescription because he needed his medication and he did not know this conduct was illegal, the fact that plaintiff was discharged from Dr. Griffin's care due to the alteration undermines his explanation. Further, plaintiff's attempt to justify his conduct is

---

[5] The ALJ also noted that plaintiff was discharged from therapy for shoulder pain due to noncompliance and pain intolerance. However, the evidence cited by the ALJ supporting this assertion, Tr. 193, appears to refer to another social security claimant. Despite the impropriety of citing this evidence, the other evidence relied on by the ALJ provides a sufficient basis for this Court to make a recommendation as to whether the ALJ erred in determining plaintiff's credibility.

unconvincing as it fails to explain why he did not simply seek a new prescription. Plaintiff

testified that the prescription was dated March 19, 2006 while it should have been dated March

16, 2006. (Tr. 48). Plaintiff also testified that he waited until he could not take not having his

medication anymore and on March 18, 2006, he altered the prescription. *Id.* It is unclear why

plaintiff did not simply contact Dr. Griffin on March 16 or 17, 2006, when he noticed the

purported error.[6] Further, if plaintiff's pharmacist also recognized the error, as he testified, it

would seem the pharmacist could have contacted Dr. Griffin as well. Regardless, the ALJ's

credibility determination based on plaintiff's illegal alteration of a prescription for opioids is

substantially supported. *See Blough v. Astrue*, No. 5:10-cv-1821, 2011 WL 4345812, at * (N.D.

Ohio Sept. 16, 2011) (affirming ALJ's credibility determination where plaintiff altered

prescriptions and was subsequently discharged from prescribing doctor's care). Accordingly,

plaintiff's second assignment of error is overruled and the ALJ's credibility determination should

be affirmed.

**IV. This matter should be reversed and remanded for further proceedings.**

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for

further proceedings consistent with this Report and Recommendation. All essential factual

issues have not been resolved in this matter, nor does the current record adequately establish

plaintiff's entitlement to benefits as of his alleged onset date. *Faucher,* 17 F.3d at 176. On

remand, the ALJ should properly evaluate the weight afforded to Dr. Martinez and Dr. Boyer as

---

[6] The Court takes judicial notice that March 16, 2006 was a Thursday and, accordingly, March 17, 2006 a Friday. Consequently, it is unlikely that Dr. Griffin's office would have been closed.

set forth in this opinion and formulate plaintiff's RFC accordingly. If necessary, the ALJ should

elicit testimony from a medical expert with regard to plaintiff's RFC.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further

proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _12/29/2011_

Karen L. Litkovitz
United States Magistrate Judge

28

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RUSSELL LYNN HEROLD,                            Case No. 1:11-cv-758
    Plaintiff                                   Barrett, J.
                                         Litkovitz, M.J.

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

### NOTICE REGARDING OBJECTION TO REPORT AND RECOMMENDATION

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

29